IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> CODY RAY MCFADDEN, <br><br> *Defendant.* | Case No. 22-CR-117-RAW |

### UNITED STATES' SENTENCING MEMORANDUM

COMES NOW the plaintiff, the United States of America, by and through Christopher J. Wilson, United States Attorney, and Joshua Satter, Assistant United States Attorney, and submits this memorandum to aid the Court's sentencing determination. For the reasons set forth below, the United States respectfully requests that Defendant be sentenced to 115 months of imprisonment.[1]

### I.   FACTUAL AND PROCEDURAL HISTORY

On July 16, 2022, Defendant asked A.T. to bring him something to drink. A.T., expecting to have a pleasant encounter with Defendant[2], obliged, and she went to Defendant's residence in McAlester, Oklahoma, with some soda and water. Shortly after A.T. went inside Defendant's home, however, she quickly realized that this visit was going to be different. As soon as A.T. arrived at the location, Defendant immediately locked the front door. He was agitated and verbally

---

[1] The probation officer determined that Defendant is a career offender, with a criminal history category of six and a resulting advisory guideline range of 151 to 188 months. (ECF No. 111 at 11, 25). The United States agrees with the probation officer's calculation. Nevertheless, because the parties stipulated in the plea agreement that Defendant's advisory guideline range is 92 to 115 months, the United States requests a sentence at the high end of that range. *See U.S. v. Fletcher*, 583 F. App'x 83, 84 (10th Cir. 2014) ("[p]lea agreements are grounded in contract law, and both parties should receive the benefit of their bargain.").

[2] At the time of the offense, A.T. and Defendant were friends. However, the pair was romantically involved for many years beforehand.

1

abusive towards A.T., telling A.T. that if anyone knocked on the front door, he would shoot her in the face with his crossbow. Defendant was allegedly hearing voices in his head, and he held A.T. responsible for those voices.

Defendant's verbal abuse quickly turned physical. When A.T. tried to walk towards the front door to leave, Defendant punched her in the face and pushed her down on a nearby couch. Defendant then beat her with a fiberglass rod for approximately thirty minutes, after which time Defendant grabbed A.T.'s hair and body and forced her into a dog cage filled with feces and urine. Defendant then padlocked the cage and, for the next thirty-six hours, tortured A.T. while she was locked inside. Defendant poked her with the fiberglass rod, attempted to shock her with an extension cord, sprayed her with mace, spit on her, and pointed a crossbow in her direction while stating he was going to shoot her. At one point during this abuse, Defendant hit the cage with an axe, which damaged its structure. A.T. was then able to break free, run to a nearby window, and jump outside. During this process Defendant swung at A.T. with the axe, contacting her head.

After A.T. successfully escaped from Defendant's residence, she ran to a nearby home for help. This led A.T. to K.W., a good Samaritan who called 911 on her behalf. Deputies from the Pittsburg County Sheriff's Office were the first law enforcement personnel to arrive on scene, and they immediately tended to A.T.'s injuries. During their time with A.T., the deputies observed the victim to be shaking and holding her left arm in a towel. A.T. was also bleeding from her head, arms, legs, and back, and she had multiple bruises all over her body.

Law enforcement then went to Defendant's trailer to see if they could locate him. At first, Defendant was nowhere to be found, so the deputies and other responding officers called out to him using a public address system. After several minutes, Defendant eventually exited his residence and told law enforcement to leave. Defendant's behavior was erratic, and he proceeded

to enter and exit his house numerous times, continually telling the responding officers to leave his property. Given Defendant's non-compliant nature coupled with his prior violent acts towards A.T., law enforcement deployed cannisters of tear gas into Defendant's trailer to force him into an area where he could be arrested. Approximately 20 minutes later, Defendant was observed crawling underneath the foundation of his home and he was finally detained.

A.T. was eventually treated at a hospital for her injuries. Due to Defendant's offense, A.T suffered a fractured ulna and received multiple stitches in her upper left arm and lower left arm. A.T. also had a laceration on her head that required ten staples, and she sustained burns, welts, and bruises all over her body.

On August 23, 2022, a grand jury returned a four-count indictment against Defendant, which charged him with violations of Title 18, United States Code, Sections: (i) 1201(a)(2), 1151, and 1153 (Kidnapping in Indian Country) (Count 1); (ii) 114, 1151, and 1153 (Maiming in Indian Country) (Count 2); (iii) 113(a)(3), 1151, and 1153 (Assault with a Dangerous Weapon with Intent to do Bodily Harm in Indian Country (Count 3); and (iv) 113(a)(6), 1151, and 1153 (Assault Resulting in Serious Bodily Injury in Indian Country) (Count 4). (ECF No. 5). On December 16, 2024, Defendant entered a guilty plea as to Count 2 of the indictment pursuant to a written plea agreement. (ECF Nos. 104-105). To date, the Court has not set Defendant's sentencing.

## II.     LEGAL STANDARD

The goal of sentencing is to achieve a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). In doing so, the Court must account for a variety of factors specific to the particular defendant and particular case. The framework for determining an appropriate sentence is set forth in § 3553(a). In particular, § 3553(a) requires that the court ensure the sentence imposed properly

considers, among other factors: (1) the nature and circumstance of the offense; (2) the history and characteristics of the defendant; (3) the need to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment for the offense; (4) the need to afford adequate deterrence; (5) the need to protect the public from further crimes of the defendant; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to the victims of the offense.

### III.   ANALYSIS

Against this factual and legal backdrop, the United States will now address the relevant sentencing factors contained in § 3553(a) that support a guideline sentence.

**A.  The nature and circumstances of the offense**

First, the nature and circumstances of the offense warrant a sentence of 115-months imprisonment. What Defendant did to A.T. on July 16, 2022, is everyone's worst nightmare. Defendant locked his friend and former romantic partner in a cage and tortured her for a prolonged period of time using a range of weapons. At numerous points during this abuse, Defendant told A.T. he was going to kill her and that he could not let her leave his home alive. Even after A.T. was able to get away from Defendant, neighbors reported to law enforcement that they heard him threaten the victim's life while he searched for her whereabouts. The only reason this is not a murder case is that A.T. was able to make a miraculous escape by jumping through a closed window, likely futher injuring herself. Defendant showed a complete disregard for human life and the Court's sentence should reflect the depravity of his behavior on the offense date.

**B.  The history and characteristics of the Defendant**

Second, Defendant's history and characteristics support a sentence of 115-months imprisonment. As noted in Section I. above, Defendant and A.T. were former romantic partners

and friends at the time of the offense. According to A.T., Defendant had a history of verbal and physical abuse towards her when they were dating. A.T. specifically told law enforcement that Defendant gave her two black eyes in the past and had previously held a knife to her throat.

Defendant's criminal history is also important to consider. Defendant has been convicted of various crimes including violent offenses (assault and battery with a dangerous weapon), property offenses (burglary), narcotics offenses (unlawful possession of a controlled substance with intent to distribute), and traffic offenses (driving under the influence, opreating a motor vehicle with a revoked license). Given Defendant's criminal history, he is a career offender under the United States Sentencing Guidelines. *See* U.S.S.G. § 4B1.1

Defendant's history of drug use and mental health issues are also noteworthy. Prior to his arrest for the offense of conviction, Defendant used methamphetamine daily. Defendant is also diagnosed with schizoaffective disorder, stimulant use disorder, cannabis use disorder, and tobacco use disorder. While Defendant appears to do well when he takes the necessary medications and refrains from drug use, he has a history of non-compliance in both respects.

### C. The need for the sentence imposed

Third, there is a strong need for a sentence of 115 months' imprisonment. Such a sentence would: (i) reflect the seriousness of the offense; (ii) promote respect for the law; and (iii) provide just punishment for the offense. A lengthy sentence would also protect the public from further crimes of Defendant and will allow Defendant to take advantage of the various resources within the Bureau of Prisons that deal with mental health and substance abuse treatment. Hopefully, this will give Defendant the necessary tools to live a law abiding life upon his release.

### D. The need to avoid unwarranted sentence disparaties

As the Court is aware, in determining the particular sentence to be imposed, it must consider the need to avoid unwarranted sentence disparities among defendants with similar records

who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). According to the Judiciary Sentencing Information ("JSIN"), during the last five fiscal years, there were 20 defendants whose primary guideline was § 2A2.2, with a Final Offense Level of 29 and a Crinimal History Category of VI. For the 20 defendants (100%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 150 months and the median legnth of imprisonment imposed was 151 months.

Based on this information, a sentence of 115 months is a signficantly lower sentence than what similarly situated defendants have been sentenced to in other cases. However, such a sentence falls within the advisory guideline range that the parties stipulated to in the plea agreement. (ECF No. 105 at 9). Accordingly, because Defendant relied on that stipulation when entering his guilty plea, he should receive a sentence at the high end of the agreed-upon range.

### IV.   CONCLUSION

For the resaons set forth above, the United States respectfully requests that Defendant be sentenced to 115 months of imprisonment.

Respectfully submitted,

CHRISTOPHER J. WILSON
United States Attorney

s/   *Joshua Satter*
JOSHUA SATTER, NYBA # 5477112
Assistant United States Attorney
Attorney for the Plaintiff
520 Denison Ave.
Muskogee, OK 74401
(918) 684-5100
Fax (918) 684-5150
Email: Joshua.Satter@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2025, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Fred Randolph Lynn, Attorney for Defendant

*/s/ Joshua Satter*
Joshua Satter, NY Bar # 5477112
Assistant United States Attorney
520 Denison Avenue
Muskogee, Oklahoma 74401
Telephone: (918) 684-5100
E-mail: Josh.Satter@usdoj.gov